

FILED IN OPEN COURT

APR 14 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:19-CR-334 |
| JINGYUAN LI, | Hon. Leonie M. Brinkema |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the Defendant, JINGYUAN LI (hereafter "JINGYUAN"), stipulate that the allegations in Count Three of the superseding indictment and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven the following facts beyond a reasonable doubt:

1. From in and around at least 2014 and continuing through in and around October 2020, within the Eastern District of Virginia, and elsewhere, the defendant JINGYUAN, did knowingly and intentionally combine, conspire, confederate, and agree with others, both known and unknown, to commit an offense against the United States, in violation 18 U.S.C. § 1956(a)(1)(B)(i), to wit: to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to distribute cocaine, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the conspiracy, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(h).

2.     JINGYUAN joined a conspiracy whose membership and leadership, at various times, included Xizhi Li (Li), Jianxing Chen (J.Chen), Qiyun Chen (Q.Chen), George Shao Min Yu (Yu), Eric Woo (Woo), Xueyong Wu (Wu), and others. The purpose of this organization was to help foreign drug trafficking organizations (DTOs) gather, launder, and repatriate proceeds derived from the DTOs' unlawful drug trafficking activities in the United States. Those drug trafficking activities primarily involved cocaine.

3.     The conspiracy cultivated relationships with DTOs to obtain as many "contracts" as possible to move and launder their United States-based drug proceeds. In exchange, members of the conspiracy received a "commission" for conducting these pick-ups and arranging these transactions, which represented a percentage of the involved funds.

4.     JINGYUAN and his co-conspirators used secretive and clandestine means to facilitate the movement of these proceeds within the United States. For example:

   a. Members of the conspiracy transported or caused others to transport drug proceeds across the United States so that additional money-laundering transactions could be conducted by other individuals several states away from where the proceeds were generated;

   b. Members of the conspiracy operated or had access to bank accounts in the United States, China, Mexico, and elsewhere. Some of these accounts were operated under the names of fictitious identities. These co-conspirators used these accounts to deposit and conduct financial transactions with drug proceeds. It included using the funds to purchase consumer goods in the United States that were ultimately shipped to China for resale. Successful completion of these transactions generated Chinese currency known as renminbi (RMB). Merchants

in Latin America seeking to import goods from China purchased RMB from members of the conspiracy using the local currency of the Latin-American country. These merchants used the RMB they bought from the conspiracy to purchase goods in China and import them into Latin-American countries. Acquisition of the Latin-American currencies, often Mexican pesos, enabled conspirators, like Li, to provide the DTOs with their drug proceeds in the currency used in their home countries which disguised the illegal nature and source of the funds used by the DTOs.

5. Beginning in or around 2014, JINGYUAN began working with Li, a cooperating defendant (CD-1), Q.Chen, and others to launder money on behalf of Mexican DTOs. JINGYUAN used a seafood import/export business, known as "Shuoyu USA Inc." (Shuoyu) as part of this scheme. Specifically, JINGYUAN used the proceeds of drug trafficking to purchase goods through Shuoyu, which he later had shipped to Hong Kong and China for sale. This enabled the conspiracy to pay back the DTOs who gave the conspiracy the contracts to launder their money. During his involvement in the conspiracy, JINGYUAN used Shuoyu to launder at least $1,000,000 of drug proceeds.

6. At some point in 2016, JINGYUAN introduced Q.Chen to J.Chen. JINGYUAN hoped to benefit financially from this introduction. Specifically, JINGYUAN knew Q.Chen had connections with members of DTOs and that J.Chen had a network of money couriers in the United States. JINGYUAN believed he would be able to help Q.Chen and J.Chen service contracts from DTOs.

7. One of J.Chen's California-based couriers was Yu. Beginning sometime in 2016, JINGYUAN used Yu to courier drug proceeds in California on behalf of a conspirator known as

CC-1. Specifically, on at least two occasions JINGYUAN and Yu met at a Hilton Hotel in Pasadena, California. At the hotel, JINGYUAN provided Yu with cash and the account numbers for Chinese bank accounts. JINGYUAN further instructed Yu to deliver the cash and accounts numbers to a third individual who would conduct financial transactions that placed the cash into the accounts. On the first such occasion, JINGYUAN provided Yu approximately $200,000. On the second occasion, which occurred on or about January 31, 2016, JINGYUAN provided Yu approximately $100,000.

8. J.Chen also worked with Li and Wu to operate the Video Loteria Casino in Guatemala City, Guatemala. Li had an interest in the casino through his company "MGM Golden Group." Li also owned the company in the fictitious "Francisco Ley Tan" identity. Wu assisted J.Chen to run the daily operations of the casino. J.Chen paid Li a monthly rent for the casino, which he used to entice DTOs to award him contracts to move their United States-based drug proceeds. J.Chen also used his courier network to service contracts that Li obtained from DTOs.

9. J.Chen introduced JINGYUAN and Wu so that they could work together to service contracts from DTOs. Wu, J.Chen, and JINGYUAN assisted one another in servicing at least five contracts from DTOs, each involving approximately $100,000.

10. In addition to Yu, J.Chen employed several couriers whose job was to conduct money pickups in the United States of funds owed to foreign DTOs.

11. One such courier was an individual hereafter known as cooperating source-1 (CS-1). Throughout 2016, CS-1 picked up money derived from the unlawful sale of cocaine in or around Virginia Beach, Virginia, located within the Eastern District of Virginia. During this same period, CS-1 traveled through the Eastern District of Virginia to obtain and transport cocaine proceeds.

12. The acts described above were done willfully and knowingly and with the specific intent to violate the law, and not by accident, mistake, inadvertence, or other innocent reason. This statement of fact does not contain every fact known to the defendant and to the United States, and it is not intended to be a full enumeration of all the facts surrounding the defendant's charges.

13. The defendant waives any rights that the defendant may have under Fed. R. Civ. P. 11(f), Fed. R. Evid. 410, the United States Constitution, and any federal statute or rule in objecting to the admissibility of the Statement of Facts in any proceeding.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

Date: 4/12/2021

By: _____
David A. Peters
Michael P. Ben'Ary
Assistant United States Attorneys
Eastern District of Virginia
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel.: (703)-299-3700

Deborah Connor
Chief, Money Laundering and Asset Recovery
Section, U.S. Department of Justice, Criminal
Division

_____
Kerry Blackburn
Mary Daly
Trial Attorneys

Defendant's Stipulation and Signature

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that if the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 1/4/2021 _____
Jingyuan Li,
Defendant

Defense Counsel's Signature

I am the attorney for Defendant in this case, Jingyuan Li. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is informed and voluntary.

Date: 4/12/21 _____
Elon Berk and Douglas Ramseur,
Counsels for Defendant